UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RENEE D. JONES,                                         Case No. 12-10502

                    Plaintiff,                          Marianne O. Battani
v.                                                      United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                       Michael Hluchaniuk
                                                       United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt 13, 14)**

## I.   PROCEDURAL HISTORY

A.    <u>Proceedings in this Court</u>

On February 6, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to

the undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for a period of disability, disability insurance, and supplemental

security income benefits.  (Dkt. 3).  This matter is before the Court on cross-

motions for summary judgment.  (Dkt. 13, 14).  Plaintiff filed a response/reply on

August 24, 2012.  (Dkt. 16).

B.     Administrative Proceedings

Plaintiff filed the instant claims on December 8 and 10, 2009, alleging that her disability began on January 1, 2007. (Dkt. 7-2, Pg ID 31). The claim was initially disapproved by the Commissioner on July 6, 2010. (Dkt. 8-2, Pg ID 39). Plaintiff requested a hearing, which was held on March 30, 2010. (8-2, Pg ID 39). In a decision dated September 1, 2011, ALJ Janice E. Shave found that plaintiff was not disabled. (Dkt. 7-2, Pg ID 31-47). Plaintiff amended the alleged onset at the hearing to December 1, 2009. (Dkt. 7-2, Pg ID 31). Plaintiff requested a review of this decision on October 31, 2011. (Dkt. 7-2, Pg ID 27). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits, [1] the Appeals Council, on January 26, 2012, denied plaintiff's request for review. (Dkt. 7-2, Pg ID 18-20); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 30 years of age at the time of the alleged onset date.  (Dkt. 7-2, Pg ID 45).  Plaintiff had past relevant work history as a stock clerk and a cashier.  (Dkt. 8-2, Pg ID 44).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the amended alleged onset date of December 1, 2009.  (Dkt. 7-2, Pg ID 33).  At step two, the ALJ found that plaintiff's bipolar disorder of mixed type and mild recurrent major depressive disorder were "severe" impairments within the meaning of the second sequential step.  (Dkt. 7-2, Pg ID 33).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  At step four, the ALJ found plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: the claimant must never climb ladders, ropes, or scaffolds; she must never be exposed to unprotected heights; she may have occasional interaction with the public and coworkers; she must not have detailed work or transactional interactions, such as sales and negotiations; the claimant is limited to low stress work requiring at most

occasional decision-making and exercise of independent judgment.  (Dkt. 7-2, Pg

ID 36-37).  At step five, the ALJ denied plaintiff benefits because, while plaintiff

could not perform her past work, she could perform a significant number of jobs

available in the national economy.  (Dkt. 7-2, Pg ID 44-45).

     B.    <u>Plaintiff's Claims of Error</u>

Plaintiff asserts that the ALJ erred by affording "little weight" to the treating

source medical opinion of Dr. Kondapaneni, plaintiff's treating psychiatrist.  (Tr.

25). The ALJ provided no explanation for the weight actually given to the treating

source's opinion, and did not provide good reasons or any evaluation in providing

only "little weight" to his opinion.  Generally, the opinions of treating physicians

are given substantial, if not controlling, deference.  Under 20 C.F.R. § 404.1527, if

controlling weight is not given the ALJ is to consider six factors: examining

relationship, treatment relationship, supportability, consistency, speciality, and any

other factors. *Id.*  The treating source rule is a two-step analysis.  At step one, if an

opinion of a treating source does not accord controlling weight then step two must

be applied; meaning that an ALJ must apply the six factors listed in 1527(d)(2).

According to plaintiff, the regulations make clear that the ALJ must adequately

articulate these six factors.  In *Rogers v. Commissioner of Social Security*, 486 F.3d

234, 243 (6th Cir. 2007), the Court stated that a "failure to follow the procedural

requirement of identifying the reasons for discounting

the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  In the present case, after providing a summary of Dr. Kondapaneni's medical opinion, the ALJ simply stated "I accord little weight to the assessment of Dr. Kondapaneni, as it is not consistent with the weight of the medical evidence of record, including his most recent treatment records (See 9F/2; See also 7F)."  Plaintiff contends that this cursory statement cannot serve as a "good reason" for the rejection of a treating source opinion as it is not "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See* Social Security Ruling 96-2p.

First, as noted above, a subsequent reviewing court simply cannot identify which portions of Dr. Kondapaneni's opinion were provided "little weight" and which portions were considered "not consistent" by the ALJ as she provided no explanation or evaluation as required by Social Security regulations and precedent set by this circuit.  Although citing specifically to exhibit 9F page 2, plaintiff says that the ALJ did not explain how the medical opinion of Dr. Kondapaneni was inconsistent with "the weight of the medical evidence of record, including his most recent treatment records."  The ALJ also made what plaintiff characterizes as a "blanket citation" to exhibit 7F, covering 25 pages of treatment records from Dr.

Kondapaneni's office ranging from February 18, 2010 to April 28, 2011. Although the ALJ summarized the medical evidence of record, she did not explain how any such evidence was inconsistent with the opinion of Dr. Kondapaneni. (Tr. 21-25). Moreover, even if the ALJ had properly declined to afford Dr. Kondapaneni's medical opinion controlling weight for the cursory reason provided, Dr. Kondapeneni's opinion evidence was still entitled to deference and should still have been entitled to great weight and adopted by the ALJ. Instead of affording proper weight to the treating source's medical opinion, the ALJ provided it only "little weight" and gave no adequate reasoning or explanation for doing so.

Moreover, the ALJ declined to adopt the only other medical opinion of record. (Tr. 25). The ALJ accorded "some weight" to the medical opinion of the state agency psychological consultant, Dr. Ron Marshall. (Tr. 25). As with the treating source's opinion, the ALJ did not provide any explanation for what evidence was consistent or inconsistent with regard to Dr. Marshall's opinion, and did not explain which portions of his opinion she was providing "some weight." (*See* Tr. 25). Without any evaluation of the weight she gave any medical opinion of record, and without any explanation for how the evidence of record supported her RFC determination, the ALJ's decision cannot be said to be supported by substantial evidence. Social Security Ruling 96-8p requires the adjudicator to perform a function-by-function evaluation of a claimant's work-related abilities

and articulate how the evidence of record supports the RFC determination. *See Delgado v. Commissioner*, 30 Fed.Appx. 542, 547 (6th Cir. 2002); *Ewing v Commissioner*, 2010 WL 6090420 (W.D. Mich 2010). Although the ALJ alleged that the RFC determination was "supported by the medical evidence of record, including opinion evidence and the claimant's treatment history," plaintiff argues that the ALJ's rejection of the medical opinions of record, and omission of any support for her RFC determination denotes a lack of substantial evidence. Moreover, the ALJ's omission of any "good reasons" for the cursory rejection of a treating source's medical opinion further denotes a lack of substantial evidence and therefore, plaintiff requests a sentence four remand.

In the present case, the ALJ provided an RFC that limited plaintiff to "occasional interaction with the public and coworkers. She must not have detailed work or transactional interactions, such as sales and negotiations. The claimant is limited to low stress work requiring at most occasional decision-making and exercise of independent judgment." (Tr. 19-20). According to plaintiff, such limitations do not adequately account for the plaintiff's "moderate" limitations in concentration, persistence or pace, as found by the ALJ.

In plaintiff's view, the ALJ did not specifically include a limitation of "moderate" difficulties in concentration, persistence or pace in the hypothetical questioning to the vocational witness. (*See* Tr. 60-64). Therefore, the question is

Report and Recommendation
Cross-Motions for Summary Judgment
*Jones v. Comm'r*; Case No. 12-10502

whether the ALJ used "adequate alternate concrete job restrictions" that accommodated plaintiff's difficulties in concentration, persistence or pace. Plaintiff contends that the evidence of record strongly supports the plaintiff's concentration impairment. Both the Social Security consulting doctor and plaintiff's treating psychiatrist determined that plaintiff had "moderate[4]" difficulties in maintaining concentration, persistence, or pace. (Tr. 282, 478). More specifically, both doctors found the plaintiff to have "moderate" difficulties in the ability to maintain attention and concentration for extended periods, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 287, 479). Moreover, Dr. Marshall opined that with regard to concentration, persistence and pace, "verbal instructions sometimes need to be repeated" to plaintiff. (Tr. 288). Additionally, Dr. Marshall opined that plaintiff may work better with brief interactions with others and may have difficulty remembering more complex instructions. (Tr. 288). These limitations are further supported by both Dr. Marshall's and Dr. Kondapaneni's findings that plaintiff has "moderate" difficulties in the ability to understand, remember, and carry out detailed instructions, and "moderate" difficulties in the ability to work in coordination with or proximity to others without being distracted by them. (Tr. 286).

Although the ALJ accounted for limitations including "occasional interaction with the public and coworkers," "no detailed work or transaction work" with examples including sales and negotiations, and "low stress work requiring at most occasional decision-making and exercise of independent judgment," plaintiff contends that none of these limitations account for limitations with regard to concentration, persistence or pace. (*See* Tr. 10-20). Further, these limitations certainly do not account for plaintiff's difficulty concentrating for extended periods, difficulty working at a consistent pace, taking unreasonable rest periods, need for repeated verbal instructions, difficulty with complex instructions, and difficulty working around others without being distracted by them, as found by Dr. Marshall and Dr. Kondapaneni. (Tr. 286-288, 479-480). According to plaintiff, the only one of these limitations which the ALJ even arguably took into account in the RFC was her restriction to "occasional interaction with the public and coworkers." (Tr. 19). However, plaintiff argues that even this limitation did not adequately account for plaintiff's limitations, because it did not fully account for a requirement that the interactions be brief or that plaintiff not work in close proximity to others, as she would be distracted by them. According to plaintiff, had the ALJ properly accounted for the plaintiff's "moderate difficulties" in concentration, persistence and pace in the hypothetical questioning, the vocational witness's testimony would have been effected, as additional limitations would have

further eroded the potential job base.  The jobs of "machine feeder," "cleaner," and "packager" would all likely require a certain degree of concentration, persistence, or pace.  Additionally, the vocational witness testified that those jobs all require an employee to be on task for more than 85% of the workday. (Tr. 64).  Taking all of her concentration impairments into account, plaintiff says it is difficult to imagine that she would not be off task 15% or more of the workday; specifically considering she would have difficulty concentrating for extended periods, difficulty concentrating while working with or near others, difficulty remembering and carrying out detailed tasks, and would take an unreasonable number and length of rest periods.

C.     The Commissioner's Motion for Summary Judgment

After reviewing the medical evidence, the Commissioner contends that the ALJ reasonably assigned little weight to an opinion from Dr. Kondapaneni, plaintiff's treating psychiatrist, and some weight to an opinion from Dr. Marshall, a psychologist who reviewed plaintiff's records for the state DDS.  (Tr. 25).  With respect to Dr. Kondapaneni's opinion, the ALJ noted inconsistencies in the assessment, and found that it conflicted with the medical evidence, including Dr. Kondapaneni's most recent treatment records.  (Tr. 25).  The ALJ noted that Dr. Marshall did not examine plaintiff, but assigned his opinion some weight because it was generally consistent with the medical evidence.  (Tr. 25).  According to the

Commissioner, substantial evidence supports the ALJ's assessment of both opinions. (Tr. 25). Although the regulations state that an ALJ must "consider" the factors in § 404.1527(d), the Commissioner maintains that there is no requirement that she must discuss all of them. According to the Commissioner, such articulation would not be possible because the sixth category, found at 20 C.F.R. §§ 404.1527(d)(6) and 416.927(d)(6), is an all-inclusive statement that the ALJ will consider any other factors that support or contradict the opinion.

Regardless, the Commissioner argues that plaintiff fails to explain why the ALJ should have assigned greater weight to Dr. Kondapaneni's opinion based on any of the factors. The ALJ provided a thorough description of Dr. Kondapaneni's opinion, noting internal inconsistencies, and assigned little weight to the opinion because it was not consistent with the medical evidence, including Dr. Kondapaneni's most recent treatment notes. (Tr. 25). Indeed, aside from plaintiff's brief hospitalization in December 2009, the treatment notes after December 1, 2009, plaintiff's alleged onset of disability date, contradict Dr. Kondapaneni's findings, particularly Dr. Kondapaneni's statement that Plaintiff's symptoms had increased since November 2010, to the point where "she would not be capable of functioning at a regular job on a sustained basis." (Tr. 477). In describing Dr. Kondapaneni's opinion, the ALJ noted a significant inconsistency. (Tr. 25). As stated by the ALJ, "[d]espite alleging an inability to function at a

regular job on a sustained basis, Dr. Kondapaneni noted at most moderate limitations in the mental residual functional capacity assessment." (Tr. 25). Indeed, as defined on the form Dr. Kondapaneni completed, moderate limitations indicate impaired functioning, but not an inability to perform activities. (Tr. 479). According to the Commissioner, this internal inconsistency in Dr. Kondapaneni's opinion called into question whether it was probative of plaintiff's functioning.

The Commissioner also contends that Dr. Kondapaneni's opinion conflicted with the most recent treatment notes, which show that although plaintiff sometimes had a depressed mood and struggled with feelings of loss due to the death of a friend, she reported improvements in her condition and sometimes reported no symptoms. (Tr. 450-74, 481-82). For example, in February and March 2010, plaintiff reported to treatment providers that she was doing "much better" and "pretty good." (Tr. 473-74). During her visit in March 2010, plaintiff stated that she sometimes had anxiety, but denied depression and mood swings. (Tr. 473). Plaintiff attended four therapy sessions between March and May 2010, and although she typically had a depressed mood, her affect was always appropriate and she had a consistently "positive" response to treatment. (Tr. 467, 469-72). Dr. Kondapaneni noted at a May 2010 appointment that plaintiff had a euthymic mood. (Tr. 468). A therapist noted in July and August 2010 that plaintiff was cheerful or calm and had an appropriate affect and positive response to treatment. (Tr. 463,

Report and Recommendation
Cross-Motions for Summary Judgment
*Jones v. Comm'r*; Case No. 12-10502

466).  In July 2010, plaintiff also reported to a nurse that she had mood swings and anxiety at times, but denied depression and stated that she was "doing well."  (Tr. 465).  In September 2010, plaintiff stated to Dr. Kondapaneni that her medication was helping her and Dr. Kondapaneni noted that plaintiff had a euthymic mood.  (Tr. 461).  In November 2010, plaintiff complained to Nurse Ruppal of increased depression and anxiety.  (Tr. 458).  But, Nurse Ruppal increased one of her medications and in March 2011, plaintiff stated that her anxiety was under control and she had no mood swings or depression.  (Tr. 451).  In June 2011, plaintiff presented to Dr. Kondapaneni and denied having anxiety and depression.  (Tr. 481).  Dr. Kondapaneni noted that her mood and affect were normal and diagnosed major depression, recurrent episode in "partial remission."  (Tr. 481-82).  Thus, according to the Commissioner, substantial evidence supports the ALJ's finding that Dr. Kondapaneni's opinion conflicted with the medical evidence, because although plaintiff reported symptoms such as depression, she consistently showed improvement with treatment and often denied having symptoms and reported doing well.  (Tr. 450-74, 481-82).

The Commissioner also argues that the ALJ's discussion of Dr. Marshall's opinion was sufficient.  In evaluating an opinion from a non-treating medical source, the ALJ considers the supportability and consistency of the opinion, the specialization of the medical source, and any other factors raised by the claimant or

others. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6).  Although plaintiff

claims that it is not possible to discern what role Dr. Marshall's opinion played in

the ALJ's analysis of her functioning, according to the Commissioner, it is

apparent that the ALJ largely adopted the opinion.  Dr. Marshall opined that

plaintiff had a mild restriction in activities of daily living, and moderate limitations

in maintaining social functioning and in concentration, persistence, or pace.  (Tr.

282).  The ALJ's decision shows that she agreed with Dr. Marshall's findings

concerning plaintiff's ability to perform activities of daily living and maintaining

concentration, persistence, or pace, but found a lesser degree of limitation in social

functioning.  (Tr. 18-19).  The ALJ found that despite plaintiff's allegations of

deficiencies in social functioning, she reported an ability to get along with others

and regularly go out to shop and socialize with her friends.  (Tr. 18, 51, 53,

210-11).  Although the ALJ did not adopt the precise functional limitations found

by Dr. Marshall, Commissioner contends that the ALJ's residual functional

capacity (RFC) finding was entirely consistent with Dr. Marshall's "Functional

Capacity Assessment."  (Tr. 19-20, 288).  After discussing plaintiff's claimed

limitations, Dr. Marshall opined that plaintiff may work better with brief

interactions with others; retained the ability to perform rote tasks and follow simple

instructions; and may have difficulty remembering more complex instructions.

(Tr. 288).  Similarly, the ALJ found that plaintiff should have no more than

occasional interaction with the public or coworkers; no detailed work or transactional interactions; and low stress work with only occasional decision making and use of independent judgment.  (Tr. 19-20).  The Commissioner points out that the ALJ included restrictions in the RFC similar to the limitations described by Dr. Marshall.  (Tr. 19-20, 288).  Although plaintiff may have preferred a more detailed discussion of Dr. Marshall's opinion, it is apparent, according to the Commissioner, that the ALJ largely credited it because it was consistent with the record and incorporated much of the opinion into her decision.

The Commissioner urges the Court to reject plaintiff's claim that although the ALJ found that she had a moderate limitation in concentration, persistence, or pace, the ALJ did not adequately account for limitations in those areas in her RFC finding or hypothetical question to the VE.  The Commissioner points out that plaintiff alleges no other flaw in the ALJ's RFC finding and hypothetical question. Although plaintiff may have preferred different or additional limitations in the RFC finding and hypothetical question, according to the Commissioner, she fails to demonstrate that the ALJ did not account for her limitation in concentration, persistence, or pace.  Plaintiff's contention that the ALJ did not adequately account for her moderate limitation in concentration, persistence, or pace focuses on limitations found in the opinions from Drs. Kondapaneni and Marshall.  Thus, while this is framed as a separate legal argument, the Commissioner maintains that

plaintiff's argument is simply a variation on her assertions that the ALJ did not properly consider those opinions.  But, according to the Commissioner, plaintiff identified no reversible error in the ALJ's consideration of those opinions.  For these reasons discussed in detail above, the ALJ reasonably assigned Dr. Kondapaneni's opinion little weight and, therefore, the ALJ did not err in declining to include limitations found by Dr. Kondapaneni in the RFC assessment and hypothetical question.

With respect to Dr. Marshall's opinion, the ALJ did not include all of his findings, but did give certain limitations "some weight" and created an RFC assessment that accommodated those limitations.  (Tr. 19-20, 288). After completing a series of twenty check boxes, Dr. Marshall provided a "Functional Capacity Assessment," in which he opined that plaintiff may work better with brief interactions with others; retained the ability to perform rote tasks and follow simple instructions; and may have difficulty remembering more complex instructions. (Tr. 286-288).  The ALJ discussed all of the limitations in the "Functional Capacity Assessment," and gave them some weight.  (Tr. 25).  Consistently, the ALJ found that plaintiff should have no more than occasional interaction with the public or coworkers; no detailed work or transactional interactions; and low stress work with only occasional decision making and use of independent judgment.  (Tr. 19-20). Although plaintiff may have preferred that the ALJ adopt verbatim all of the

limitations included in the check boxes, the Commissioner argues that she fails to identify any authority indicating that it was inappropriate for the ALJ to explicitly consider only Dr. Marshall's ultimate opinion concerning her functional capacity. The Commissioner contends that the ALJ's RFC assessment and hypothetical question accounted for plaintiff's moderate deficiency in concentration, persistence or pace.

D.   Plaintiff's Response/Reply

Plaintiff points out that the ALJ never made specific mention of "internal inconsistencies" in Dr. Kondapaneni's opinion, but defendant cites to the ALJ's statement that "Despite alleging an inability to function at a regular job on a sustained basis, Dr. Kondapaneni noted at most moderate limitations in the mental residual functional capacity assessment."  (Defendant's Brief pg. 12 citing Tr. 25). Plaintiff argues that defendant's contention that this statement could serve as a "good reason" for the ALJ's rejection of a treating source statement is without merit.  Essentially, defendant is arguing that "moderate" limitations in concentration, persistence or pace; social functioning; and/or activities of daily living, could never be work preclusive.  According to plaintiff, this is in direct contradiction to the wealth of case law in the Sixth Circuit, finding that "moderate" impairments can be work preclusive.  *See Ealy v. Commissioner*, 594 F.3d 504 (6th Cir. 2010).  Additionally, plaintiff asserts that defendant's argument

does not consider the combined effect of all of the areas in which the plaintiff was noted to have a "moderate" impairments in functioning, nine areas in all.  Given that plaintiff's treating source, Dr. Kondapeneni, found numerous "moderate" limitations throughout his Mental Residual Functional Capacity assessment, and concluded that plaintiff would "not be capable of functioning at a regular job on a sustained basis," Dr. Kondapeneni clearly found that his patient's "moderate" limitations precluded regular and sustained work.  (Tr. 477-480). Therefore, according to plaintiff, no internal inconsistency exists, and defendant's argument should be rejected.

Plaintiff also disagrees with defendant's contention that Dr. Kondapeneni's treating source statement was properly rejected by the ALJ because the ALJ found that "it was not consistent with the medical evidence, including Dr. Kondapaneni's most recent treatment notes." (Defendant's Brief pg. 11).  Plaintiff points out that the ALJ's only example of such an inconsistency is in fact his citation to Dr. Kondapeneni's June 2, 2011 medication reviews.  (Tr. 25). According to plaintiff, it is quite troubling that her improvement on one medication review could serve to discount the entirety of a treating source statement that provides information for a multiple year treatment history.  (Tr. 475-480).  Further, plaintiff points out that the ALJ does not actually explain how the June 2, 2011 medication review conflicts with the entirety of Dr. Kondapeneni's treating source opinion.  The only other

evidence cited by the ALJ as "inconsistent" with Dr. Kondapeneni's treating

source opinion was a blanket citation to "Exhibit 7F." (Tr. 25). Exhibit 7F

consists of 25 pages of office treatment notes from February 2010 through April of

2011. According to plaintiff, it is unclear which notes from this grouping the ALJ

felt were inconsistent with Dr. Kondapeneni's treating source opinion. The notes

all report plaintiff as depressed and/or anxious, and often report increased stress,

anxiety, and/or decreased sleep. (Tr. 450-474). Additionally, a December 3, 2010

assessment noted that plaintiff's insight was poor and that she had difficulty with

concentration. (Tr. 455). If the ALJ felt that this evidence was somehow

inconsistent with Dr. Kondapeneni's treating source opinion, plaintiff contends that

more explanation was necessary in order to trace the path of the ALJ's reasoning.

And, if the ALJ's reasoning for rejecting the entirety of the treating source

statement was because the Doctor's most recent medication review was

"inconsistent," plaintiff argues that substantial evidence does not support such a

determination. Social Security Ruling 96-2p provides that "Adjudicators must

remember that a finding that a treating source medical opinion is not

well-supported by medically acceptable clinical and laboratory diagnostic

techniques or is inconsistent with the other substantial evidence in the case record

means only that the opinion is not entitled to 'controlling weight,' not that the

opinion should be rejected. Treating source medical opinions are still entitled to

deference and must be weighed using all of the factors provided in 20 CFR

404.1527 and 416.927.  In many cases, a treating source's medical opinion will be

entitled to the greatest weight and should be adopted, even if it does not meet the

test for controlling weight."  *See* SSR 96-2p, *Blakley v. Commissioner*, 581 F.3d

399, 408 (6th Cir. 2009).  Moreover, the ALJ did not consider Dr. Kondapeneni's

opinion that plaintiff's "impairments or treatment" would cause her to be absent

from work about twice per month.  (Tr. 477).  According to plaintiff, the ALJ

provided no analysis, evaluation or evidence which would be inconsistent with this

opinion.  And, the Vocational Witness testified that such a limitation would

preclude all work if it occurred on a regular basis.  (Tr. 64).

Plaintiff also urges the Court to reject defendant's contention that the ALJ's

evaluation of Dr. Marshall's, the non-examining State disability consultant,

opinion was also proper.  According to plaintiff, the ALJ's assignment of "some

weight because [the assessment] is generally consistent with the weight of the

medical evidence of record, including the evidence received into the record after

the initial determination" is astonishing, considering the striking similarities

between Dr. Kondapaneni's mental RFC assessment and Dr. Marshall's

assessment.  (*See* Tr. 25, 286-287, 479-480).  Both physicians found plaintiff to

have "moderate" limitations with respect to:  The ability to understand and

remember detailed instructions, the ability to carry out detailed instructions, the

ability to maintain attention and concentration for extended periods, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Tr. 286-287, 479-480).  Moreover, Dr. Marshall opined that plaintiff would be limited to "rote tasks," the ability to follow only "simple instructions," and that she would be limited to "brief interactions with others."  However, according to plaintiff, the ALJ's hypothetical questioning and resulting RFC determination do not reflect even Dr. Marshall's conclusions, as the ALJ did not account for a limitation to "rote tasks," the ability to follow only "simple instructions" or a limitation to "brief interactions with others."  (Tr. 61-62, 288).  Although the ALJ limited the hypothetical to "no detailed work," this certainly does not account for a more refined limitation to only "simple instructions."  (Tr. 61).  Similarly, although the ALJ limited the hypothetical to "occasional interaction with the public, occasional interaction with coworkers," plaintiff argues that this limitation does not account for a more refined limitation to "brief interactions with others."  (Tr. 61).  Further, it does not account for limitations with supervisors at all.  Additionally, "occasional" is defined as occurring up to one-third of the workday.   Social Security Ruling 83-10.  According to plaintiff, a restriction to "brief interactions with others" is more

limiting: although plaintiff could theoretically interact with others, perhaps even up to a total of 33.3% of the workday, the interactions themselves must be brief in nature.  Plaintiff contends that this limitation was not adequately portrayed in the hypothetical questioning or resulting RFC determination.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant." *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul.

96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.

> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20
C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner
makes a dispositive finding at any point in the five-step process, the review
terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence
and severity of limitations caused by her impairments and the fact that she is
precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited
with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step
without a finding that the claimant is not disabled, the burden transfers to the
Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).
At the fifth step, the Commissioner is required to show that "other jobs in
significant numbers exist in the national economy that [claimant] could perform
given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at
241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the
decision must be affirmed even if the court would have decided the matter
differently and even where substantial evidence supports the opposite conclusion.
*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir.2007). "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Id*. at 406, citing § 404 .1527(d)(2). Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used." In this case, the ALJ gave virtually no articulated reasons for rejecting the opinions of plaintiff's treating physician. In addition, the ALJ gave the opinions of the consulting physician, who largely agreed with the treating physician "some weight." This apparent inconsistency is not explained either.

Moreover, if the ALJ determined that Dr. Kondapaneni's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion,

consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F .3d 399, 406 (6th Cir. 2009). This was not done either. And, even if Dr. Kondapaneni's opinion was not entitled to controlling weight, it was entitled to deference. 20 C.F.R.

§ 404.1527(d)(2)(i). As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion is
> not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

The ALJ failed to address why Dr. Kondapaneni's opinion should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R.

§ 404.1527(d)(2). In addition, the undersigned finds the ALJ's analysis of purported "inconsistencies" between Dr. Kondapaneni's opinions and his office notes to be wholly inadequate. A single positive office visit and an off-hand reference to an exhibit containing many notes does not provide the Court with a sufficient roadmap of the ground for the ALJ's reasoning.

As to the remaining justifications offered by the ALJ, the undersigned notes

that "the courts may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993, *6 (6th Cir. 1993) (unpublished opinion), *quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,463 U.S. 29, 50 (1983) (citation omitted). "Courts are not at liberty to speculate on the basis of an administrative agency's order ... The court is not free to accept 'appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board.'" *Hyatt Corp. v. N.L.R.B.*, 929 F.2d 361, 367 (6th Cir. 1991). Thus, the Commissioner's *post hoc* rationalization is not an acceptable substitute for the ALJ's lack of rationale concerning her omission in considering the opinion of plaintiff's treating physician. This matter should be remanded for the ALJ to further explain the weight given plaintiff's treating physician opinions and those offered by the consulting physician, which largely track Dr. Kondapaneni's opinions. Given this conclusion, additional vocational expert testimony may be required, depending on the conclusions the ALJ's reaches on remand.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be

**REVERSED**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may

Report and Recommendation
Cross-Motions for Summary Judgment
*Jones v. Comm'r*; Case No. 12-10502

rule without awaiting the response.

Date: February 26, 2013                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on February 26, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: John M. Brissette, Lynn Marie Dodge, AUSA, and the Commissioner of Social Security.

                                           s/Tammy Hallwood
                                           Case Manage
                                           (810) 341-7850
                                           tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Jones v. Comm'r*; Case No. 12-10502